IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JOHNNY BAILEY                                                                                   PLAINTIFF

v.                                         Case No. 1:19-cv-1002

METROPOLITAN LIFE
INSURANCE COMPANY                                                                DEFENDANT

**OPINION and ORDER**

Plaintiff Johnny Bailey filed this action against Defendant Metropolitan Life Insurance Company pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. In his complaint, Plaintiff alleges that his claim for Accidental Death and Dismemberment ("AD&D") benefits was wrongly denied by Defendant. The Administrative Record has been filed, and both parties have submitted summary judgment motions and supporting documents (ECF Nos. 14, 15, 20). The Court finds the matter ripe for consideration.

**I. BACKGROUND**

At the time of the events at issue, Plaintiff was employed by Georgia-Pacific LLC. As such, he was a participant in Georgia-Pacific's Hourly Union Non-Flex Union Plan ("Plan"), which includes AD&D insurance coverage.

**A. AD&D Coverage**

The Plan offers AD&D coverage under the following circumstances:

> **ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**
>
> If You sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss describes in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury.

> **Direct and Sole Cause**  means that the Covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes.  We will deem a loss to be the direct result of an accidental injury if it results from unavoidable exposure to the elements and such exposure was a direct result of an accident.

AR 63.[1]

The Plan excludes coverage for AD&D under certain exceptions, including but not limited to the following:

> **EXCLUSIONS . . .**
>
> We will not pay benefits under this section for any loss caused or contributed to by:
>
> 1.  physical or mental illness or the diagnosis or treatment of such illness.

AR 63.

### A. Plaintiff's Claim for AD&D Benefits

On April 3, 2017, Plaintiff was admitted to the hospital for a blood clot behind his right knee.  An operation was performed, after which Plaintiff suffered an allergic reaction to heparin.  After multiple surgeries, Plaintiff's right leg was amputated on April 12, 2017.

On December 5, 2017, Plaintiff submitted a claim form for AD&D benefits.  Plaintiff wrote that he "was admitted to hospital for blood clot behind right knee.  Had allergic reaction to Heprin [sic].  Had to amputate right leg.  Had 3 amputations on R leg between 4-4-17 & 4-12-17."  AR 176.  The claim form requested a statement from an attending physician, and Plaintiff's vascular surgeon, Dr. Lewis C "Trey" Lyons, III, submitted his statement on a form prepared by Defendant.  AR 178.

---

[1] The parties have filed a Stipulated Administrative Record.  ECF No. 14.  The Court will use "AR" to cite to the Stipulated Administrative Record and will use the Bates numbering.

Next to the box asking for "Date of accident causing present loss," Dr. Lyons wrote "Not accident related." AR 178. When asked to describe the exact nature, location, and extent of all injuries sustained, Dr. Lyons wrote, "No injuries/accidents." AR 178. In response to the question, "[w]as the injury described solely responsible for the loss?" Dr. Lyons answered "Yes" but also wrote in and circled the abbreviation "N/A." AR 178. The form asked Dr. Lyon to give the "particular of any contributing cause or causes," and Dr. Lyons responded, "PVD, Acute limb ischemia,[2] Heparin induced thrombocytopenia,[3] multiple vascular surgeries that despite best efforts resulted in hip disarticulation." AR 178. When asked if it was his opinion that the loss was "caused in any way by illness," Dr. Lyons checked "Yes." When asked to state the "cause of the amputation," Dr. Lyons wrote "critical limb ischemia of R lower extremity with multiple failed - re-vasc. attempts."

On December 27, 2017, an employee of Defendant generated a form referring Plaintiff's claim for senior review, stating that Plaintiff "describes accident as allergic [sic] reaction while under physical illness treatment leading to leg amputation[.]" AR 182. "Attending physician statement confirms loss due to illness." AR 182. A senior review for Defendant responded: "[A]gree to deny dismemberment for not an accident and illness exclusion." AR 184.

On January 25, 2018, MetLife sent Plaintiff a letter denying his claim and advising him of his right to appeal. AR 180. The letter explained the reasons for denial:

> According to our records, your Claimant's Statement describes the accident as a blood clot behind the right knee, having an allergic reaction to Heparin, and resulted in the amputation of your right leg. The Attending Physician's Statement, completed by Lewis C. Lyons III, confirms there was no injury or accident and the loss was due to a physical illness.

---

[2] Acute limb ischemia occurs when there is a sudden decrease in blood flow to the affected limb. http://www.healthgrades.com (last visited March 31, 2021).
[3] Thrombocytopenia is a condition in which a person has a low blood platelet count. http://www.mayoclinic.org (last visited March 31, 2021).

> Consequently, Accidental Dismemberment benefits are not payable because the loss was not due to an accidental injury. In addition, even if the loss was due to an accidental injury, which it was not, the Plan's illness exclusion applies because your loss resulted from a physical illness, in this case PVD, acute limb ischemia, and heparin induced thrombocytopenia.

AR 180.

**B. Plaintiff's Appeal**

Plaintiff appealed Defendant's denial of benefits. Plaintiff's appeal letter argued that Plaintiff's reaction to heparin was a "medical accident" covered by the AD&D language in the Plan. AR 193. In support of his appeal, asking that Defendant's denial be overturned, Plaintiff submitted a letter from Dr. Lyons, which stated in part:

> [Plaintiff] presented with acute limb ischemia with iliac and femoropopliteal thrombosis from, most likely, an underlying hypercoagulable disorder that was found to be lupus anticoagulant. After his initial operation, he suffered from a severe form of heparin induced thrombocytopenia that resulted in bilateral lower extremity acute thrombosis. The left leg was successfully saved, however, complete thrombosis of the right iliac and femoropopliteal segments of the right leg, resulted in a high right hip disarticulation. This could absolutely be classified as a "medical accident."

AR 196.

By letter dated December 4, 2018, Defendant upheld its original denial of benefits. AR 199-200. Addressing Plaintiff's arguments on appeal the letter stated: "As described above and in the initial denial letter, AD&D benefits are payable when the loss is due to an accident and the loss is not caused or contributed to by illness or treatment for an illness. Here, [Plaintiff] had a lupus anticoagulant disorder by which he was treated with Heparin, not due to an accidental injury." AR 200.

On January 15, 2019, Plaintiff filed this ERISA action against Defendant, alleging that Defendant wrongfully denied his claim for AD&D benefits. Both parties argue that they are

4

entitled to judgment as a matter of law.

## II. SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

## III. ERISA STANDARD OF REVIEW

"Under ERISA, claimants may appeal an adverse-benefit decision and are guaranteed an appeals process that includes providing a full and fair review, an opportunity to submit written documents, and independence from the initial adverse decision." *Verschelden v. Hartford Life and Accident Ins. Co.*, 484 F. Supp. 3d 661, 669 (W.D. Mo. 2020) (citing 29 C.F.R. § 2560.503-1(h)). ERISA allows a plan participant to bring a civil action to "recover benefits due him under the term of the plan" and "to enforce his rights under the term of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA contains no standard of review, but the Supreme Court has held that a reviewing court should make a *de novo* review unless the plan "gives the administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the term of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants discretion, the court reviews for an abuse of discretion. *Id.*

The Plan at issue contains language giving Defendant, as the AD&D claims administrator delegated by Georgia-Pacific, the "complete discretionary authority" to construe the terms of the plan and determine eligibility for benefits. AR 150. However, Plaintiff argues that circumstances exist in this case that would allow the Court to engage in a *de novo* or less deferential standard of review. First, Plaintiff argues that the Court should apply Arkansas Insurance Commission Rule 101 to exclude the Plan's discretionary clause. Second, Plaintiff argues that certain "procedural irregularities" exist.

### A. Arkansas Insurance Commission Rule 101

Arkansas Insurance Commission Rule 101 bans discretionary clauses in certain disability income policies. The applicable provision of Rule 101 states:

> No policy, contract, certificate or agreement offered or issued in this State providing for disability income protection coverage may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

Ark. Admin. Code 054.00.101-4. Rule 101 defines "disability income protection coverage" as a "policy, contract, certificate or agreement issued by an insurer subject to the insurance laws and regulations of this State, or subject to the jurisdiction of the Commissioner, that provides for periodic payments, weekly or monthly, for a specified period during the continuance of disability resulting from either sickness or injury or a combination of them." Ark. Admin. Code 054.00.101-3.

Defendant asserts that Rule 101 does not apply here because the AD&D dismemberment

6

coverage is provided under a life policy, and the benefits are paid in one sum rather than periodic payments. AR 64. The Court agrees. Georgia-Pacific's "comprehensive employee welfare benefit plan . . .includes the Medical Plan and Dental Plan, Life and AD&D Insurance Plan, Accident and Sickness Benefit Plan, and Flexible Spending Account described in this booklet." AR 73. The comprehensive employee welfare benefit plan consists of four separate types of coverage. The Accident and Sickness Benefit Plan provides for periodic payments; however, the AD&D Insurance Plan pays out benefits in one sum. Plaintiff's claim falls under the AD&D coverage, which is not disability income protection coverage as defined by Rule 101. Thus, Rule 101 does not void the discretionary provision under the circumstances of this case.

### B. Less Deferential Standard of Review

Plaintiff urges the Court to adopt a standard of review that is less deferential than an abuse of discretion standard because of certain "procedural irregularities." Even if a discretionary provision exists, a less deferential standard is warranted if a plaintiff can provide evidence to demonstrate "that . . . a serious procedural irregularity existed . . . which caused a serious breach of the plan administrator's fiduciary duty." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998), *abrogated on other grounds by Metropolitan Life Ins. Co. v. Glenn*, 554 U.S.105 (2008).

Plaintiff argues that the following "procedural irregularities" warrant a less deferential standard of review: (1) Defendant did not rely on any medical opinion in denying the claim; (2) Defendant's denial opinions were cursory; and (3) Defendant "shifted" its bases for denying the claim. The Court is not persuaded that these actions are procedural in nature. Instead, Plaintiff seems to be taking aim at Defendant's analysis of information in the record. Nevertheless, the Court will address these actions below.

A plan fiduciary must base medical determinations upon information and opinions supplied

by healthcare professionals but there is no requirement that a plan fiduciary retain its own independent health care professionals. *Jarecke v. Hartford Life and Accident Ins. Co.* 345 F. Supp. 2d 855, 859 (W.D. Mo. 2004). Here, Defendant relied on the statements of Dr. Lyons to reach its determination. In its determination opinions, Defendant explained the bases for its decision in a manner understandable to a reasonable person as required by ERISA. *See* 29 U.S.C. § 1133. Further, Defendant's original denial letter and its appeal denial referenced both the accidental loss limitation and the illness exclusion as reasons for denial. AR 185-186, 199-200.

Plaintiff has not demonstrated the existence of a procedural irregularity that caused a serious breach of Defendant's fiduciary duty. Therefore, the Court reviews to see whether Defendant abused its discretion.

### C. Abuse of Discretion Standard

"Review of an administrator's decision under an abuse of discretion standard, though deferential, is not tantamount to rubber-stamping the result." *Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 680 (8th Cir. 2005). The Court will only reverse Defendant's decision if it is found to be arbitrary and capricious. *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir. 2006). "When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007). Substantial evidence is defined as "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000).

"The discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." *Ratliff*, 489 F.3d at 348. "The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the

evidence before him, not that a reasonable person *would* have reached that decision." *Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 887 (8th Cir. 2002). The Court may consider the quantity and quality of evidence before Defendant, and the Court is mindful of the Eighth Circuit's instruction that courts should be hesitant to interfere with the administration of an ERISA plan. *See Groves*, 438 F.3d at 875.

### III. DISCUSSION

Plaintiff's primary argument is that Defendant abused its discretion by unreasonably interpreting the Plan language. Specifically, Plaintiff argues that Defendant's interpretation of the Plan's accidental loss limitation and illness exclusion was unreasonable.

To determine if Defendant's interpretation of the Plan's language is reasonable, the Court examines:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

*Torres*, 405 F.3d at 680. These factors inform the Court's analysis, but "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination." *King v. Hartford Life Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc) (internal quotation omitted).

#### A. Accidental Loss Limitation

Under the terms of the Plan, if a Plan participant sustains "an accidental injury that is the Direct and Sole Cause of a Covered Loss," the Plan will pay AD&D benefits. AR 63. "Direct and

9

Sole Cause" means that the "Covered Loss . . . was a direct result of the accidental injury, independent of other causes." AR 63. The Plan does not define "accidental." Defendant determined that Plaintiff's "loss was not due to an accidental injury." AR 186, 199-200.

The original form submitted by Dr. Lyons stated that the loss was "not accident related." AR 178. However, in the letter he described as an "addendum" and submitted during the appeal process, Dr. Lyons stated that that the amputation of Plaintiff's right leg "could absolutely be classified as a 'medical accident." AR 196. The Court notes the confusion here caused by Dr. Lyons's conflicting opinions regarding whether Plaintiff's amputation was accidental. However, it was reasonable for Defendant to conclude from Dr. Lyons' statements that Plaintiff's heparin-induced reaction was not the sole, direct, and independent cause of Plaintiff's amputation.

In his original form, Dr. Lyons identified peripheral vascular disease ("PVD"), acute limb ischemia, heparin-induced thrombocytopenia, and multiple vascular surgeries as contributing causes for the loss. AR 178. He further stated that it was his opinion that the loss was caused by illness. AR 178. Dr. Lyons's addendum described the heparin-induced thrombocytopenia as a "medical accident" but was silent as to whether there were other contributing causes, which was a question he answered on the original form. Plaintiff's addendum did not state that he was retracting all opinions in the original form he submitted. It was reasonable for Defendant to conclude that by submitting the addendum, Dr. Lyons intended to retract his earlier opinion that the amputation was "not accident related" while leaving in place his earlier opinion that acute limb ischemia, PVD, and multiple vascular surgeries were all contributing causes of the amputation. Reading the Plan's accidental loss limitation, it was reasonable for Defendant to determine that Plaintiff's amputation was not a direct result of an accidental injury, independent of other causes. Further, this interpretation is not contrary to the Plan's clear language.

### B. Illness Exclusion

The Plan states that Defendant will not "pay benefits under this section for any loss caused or contributed to by: physical illness or the diagnosis or treatment of such illness." AR 64. Defendant determined that Plaintiff's amputation was caused by illness or treatment of an illness. Dr. Lyons opined that the loss was caused by illness. AR 178. When asked to state the cause of the amputation, Dr. Lyons listed one of Plaintiff's illnesses, critical limb ischemia. AR 178. In his addendum, Dr. Lyons states that Plaintiff "presented with acute limb ischemia with iliac and femoropopliteal thrombosis from, most likely, an underlying hypercoagulable disorder that was found to be lupus anticoagulant." AR 196. Thus, Defendant's decision to apply the illness exclusion was based on a reasonable reading of Dr. Lyons's statement and letter. AR 178 & 196. Further, this interpretation is not contrary to the Plan's clear language.

Plaintiff argues that Defendant's interpretation of the illness exclusion renders another exclusion, the medication exclusion, meaningless. The Plan excludes coverage for physical or mental illness or treatment of such illness. AR 64. The Plan also excludes coverage for "the voluntary intake or use by any means of any drug, medication or sedative, unless it is taken or used as prescribed by a Physician." AR 64. Plaintiff asserts that the interpretation proffered by Defendant that a heparin-induced reaction is excluded because it constitutes "treatment of an illness" would render the medication exclusion meaningless. In other words, if all losses caused by treatment for illness were excluded, this would necessarily exclude all losses resulting from the use of medicine on the advice of a physician when the medicine was prescribed to treat an illness.

The illness exclusion applies where the claimant takes medication solely for the treatment of a physical or mental illness that caused or contributed to the loss. On the other hand, the medication exclusion is more broad and applies generally to a claimant's voluntary intake or use

11

of any drug, medication or sedative, unless taken or used as prescribed by a physician. There is a distinction between losses resulting from drug use prescribed as a treatment for a sickness or disease and those resulting from use of drugs without a prescription.

Defendant's interpretation of the illness exclusion is as follows: the heparin treatment, which was given solely for the treatment of Plaintiff's physical illnesses (PVD, acute limb ischemia, and an underlying hypercoagulable disorder), in conjunction with heparin-induced reaction caused or contributed to the amputation. The Court cannot find that this interpretation of the illness exclusion renders the medication exclusion meaningless.

### C. Conflict

Where the plan administrator is the same party that pays claims for benefits, the Court must consider the conflict of interest arising from such an arrangement as a factor in its reasonableness determination. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-19 (2008). The importance of this factor will vary depending on whether the circumstances suggest a high or low likelihood that the conflict of interest affected the benefits decision. *Id.* at 117. For example, if an administrator has a history of biased claims administration, the factor may be more significant. *Id.* However, if the administrator has taken "active steps to reduce bias and to promote accuracy," the factor will be less significant. *Id.* In the instant case, the record contains little evidence about either Defendant's claims administration history or its efforts to ensure that claims assessment is not affected by the conflict. There is no evidence to suggest that the conflict of interest impacted Defendant's assessment of Plaintiff's claim. Thus, the Court gives the conflict some weight but not substantial weight.

### IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant's interpretation of the Plan is

reasonable. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**, and the decision to deny Plaintiff's claim for AD&D benefits is **AFFIRMED**. Further, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

    **IT IS SO ORDERED**, this 1st day of April, 2021.

                                          /s/ Susan O. Hickey  
                                          Susan O. Hickey  
                                          Chief United States District Judge